IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

E.L., by and through her      )
parents, G.L. and D.L.,       )
                              )
            Plaintiff,        )
                              )        1:12CV29
        v.                    )
                              )
CHAPEL HILL-CARRBORO BOARD OF )
EDUCATION,                    )
                              )
            Defendant.        )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff E.L. filed this action through her parents, G.L. and D.L., against Defendant Chapel Hill-Carrboro Board of Education ("the Board"), alleging violations of the Individuals with Disabilities Education Act ("IDEA"). Before the court are cross-motions seeking a final disposition in the case. The Board has filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative a motion for summary judgment on all claims. (Doc. 33.) E.L. has filed a motion for summary judgment on all claims. (Doc. 38.) E.L. has also filed a motion to treat her motion for summary judgment as timely filed. (Doc. 41.) For the reasons set forth below, E.L.'s motion to treat her summary judgment motion as timely filed is granted, her motion for summary judgment is denied, and

the Board's motion to dismiss or, in the alternative, for summary judgment is granted.

## I.   BACKGROUND

E.L. is an eight-year-old girl who has been diagnosed with autism[1] and has struggled since birth to learn basic skills that other children acquire naturally.  She qualifies as a child with a disability under the IDEA.  20 U.S.C. § 1401(3).  E.L. lives with her family in Chapel Hill, North Carolina, in the Chapel Hill-Carrboro City Schools District, for which the Board is responsible.  She began attending Frank Porter Graham Child Development Center ("FPG") in March 2008 and received Individualized Education Programs ("IEPs") for 2008-09 and 2009-10.  In addition to the instruction and services E.L. received at FPG, E.L.'s parents employed private specialists to provide further instruction and evaluation.

E.L.'s parents became concerned that E.L. was not making sufficient progress and that her IEPs and the resources at FPG were not meeting her needs.  While planning for E.L.'s 2009-10 IEP in the summer of 2009, E.L.'s parents suggested splitting

---

[1] E.L. has received several diagnoses.  Her first amended complaint states that she has "Autism Spectrum Disorder, Apraxia of Speech, Dyspraxia, and sensory modulation problems."  (Doc. 18 ¶ 1.)  At least one of the Board's witnesses during the administrative hearing questioned whether E.L. has apraxia of speech, Hr'g Tr. vol. 11, 1933:9-17, but E.L.'s exact difficulties need not be determined now. The important point is that the parties agree E.L. has an IDEA-qualifying disability under 20 U.S.C. § 1401(3).

E.L.'s enrollment at FPG with the Mariposa School in Cary, North Carolina. Mariposa is a private school that enrolls only disabled students and uses a different method of teaching from the method used at FPG. E.L.'s 2009-10 IEP originally provided for instruction at FPG five days a week, but E.L.'s parents insisted on placing E.L. at Mariposa for three days and FPG for two days a week. E.L. began that split program in September 2009. Increasingly concerned about E.L.'s progress, E.L.'s parents removed her from FPG in March 2010 and enrolled her at Mariposa full-time. E.L.'s IEP team, including her parents and FPG staff, met several times in the fall of 2010 to determine her 2010-11 IEP. That IEP was never finalized, however, as the team was unable to agree on E.L.'s placement.

E.L.'s parents filed a petition for a due process hearing pursuant to 20 U.S.C. § 1415(f) on March 30, 2010, alleging that E.L. had been denied a free appropriate public education ("FAPE") under the IDEA. The North Carolina Office of Administrative Hearings ("OAH") appointed Administrative Law Judge ("ALJ") Augustus B. Elkins II to serve as the hearing officer in the case. After an extensive hearing, the ALJ issued his decision on October 7, 2011.[2] The ALJ's decision was

_____

[2] The ALJ actually issued his decision in two parts: the first on September 9, 2011, dismissing all claims occurring prior to March 30, 2009, because those claims were barred by the statute of limitations;

3

favorable to the Board in almost all respects. The Board, however, appealed the decision on the one issue decided against it: whether the Board had provided appropriate speech language services from April to May 2009 and September to December 2009. E.L. did not appeal but filed a "motion to quash respondent's purported notice of appeal" in which it challenged the authority of the State Review Officer ("SRO") to review the ALJ's decision. (Doc. 40-1.)

The North Carolina Department of Public Instruction ("DPI") appointed SRO Joe D. Walters to review the case pursuant to 20 U.S.C. § 1415(g) and N.C. Gen. Stat. 115C-109.9. On December 6, 2011, the SRO decided in favor of the Board on the one issue at stake, reversing the ALJ's decision as to whether the Board provided appropriate speech language services. E.L. filed the current action on January 9, 2012, pursuant to 20 U.S.C. § 1415(i)(2).

E.L. contends that she has exhausted all levels of review that the IDEA authorizes and has properly brought her claims before this court. She asserts that she was denied a FAPE because her 2008-09, 2009-10, and 2010-11 IEPs did not meet her needs, particularly for one-on-one instruction, and the services that the Board provided did not further the goals of the IEPs.

---

and the second on October 7, 2011, addressing the remaining claims. (Doc. 7-2 at 10.)

4

She seeks reimbursement for private educational services and attorney's fees. The Board argues that the court should dismiss E.L.'s claims that challenge the ALJ's adverse findings because she failed to exhaust the administrative remedies available to her under the IDEA. The Board further urges the court to affirm the SRO's decision that the IEPs met E.L.'s needs and the services provided adequately fulfilled what the IEPs required.

## II. ANALYSIS

The court considers first the Board's contention that this court lacks subject matter jurisdiction to consider E.L.'s challenge to the ALJ's findings against her because she failed to exhaust her administrative remedies under the IDEA. (Doc. 34 at 21.) E.L. argues that she exhausted her remedies because, she contends, the ALJ's hearing was the *only* level of administrative review authorized by the IDEA and his decision was therefore final. (Doc. 40 at 1, 3.) A court may grant a motion to dismiss for lack of subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted).

### A. Statutory Framework

The court examines first the statutory framework of the IDEA to assess E.L's claim that the ALJ's decision was final and

5

appealable under the IDEA.

The IDEA provides for a system of administrative review before any claims arising under it may be pursued in state or federal court. Under the IDEA, states choose between a one-tiered system, in which a "state educational agency" decides the case, and a two-tiered system, in which a "local educational agency" initially decides the case and any appeal must be taken to a state educational agency review officer. 20 U.S.C. § 1415(f)(1)(A), (g)(1). Any aggrieved party may file an original civil action in the courts only after a decision on the merits by a state educational agency. Id. § 1415(i)(2)(A). Thus, in a one-tiered system, a civil action may be filed after the one and only due process hearing; in a two-tiered system, an aggrieved party must appeal to (and obtain a decision from) the state educational agency before filing a civil action.

North Carolina opted for a two-tiered system. A person wishing to sue under the IDEA first files a petition with OAH. N.C. Gen. Stat. § 115C-109.6. OAH, a state agency, appoints an ALJ to hear and decide the case. Id. After this initial hearing and decision, any aggrieved party may appeal the ALJ's decision. N.C. Gen. Stat. § 115C-109.9. The state Board of Education, through its Exceptional Children Division, appoints an SRO to review the ALJ's findings appealed and issue an independent decision. Id. The SRO's decision is final unless

6

an aggrieved party timely files a civil action pursuant to 20 U.S.C. § 1415(i)(2)(A).

E.L. contends that the IDEA does not authorize the kind of system North Carolina has in place. She argues that North Carolina's first tier of review (by the ALJ) actually constitutes the "hearing . . . conducted by the State educational agency" contemplated by 20 U.S.C. § 1415(f)(1)(A), and therefore no party has the right to appeal that decision to an SRO under section 1415(g). (Doc. 40-1.) Instead, E.L. contends, a party aggrieved by the ALJ's decision has the right to file an original civil action under section 1415(i)(2). (Id.) Consistent with this view, E.L. moved to quash the Board's previous appeal to the SRO. (Id.) E.L.'s contention that North Carolina's second tier of review is unauthorized thus underpins her claim that she has exhausted all her administrative remedies under the IDEA.

E.L. is not the first North Carolinian to challenge whether the state's system of review is authorized by the IDEA. L.K. ex rel. Henderson v. N.C. State Bd. of Educ., No. 5:08-CV-85-BR, 2009 WL 3172129, at *1 (E.D.N.C. Oct. 1, 2009). But to date no court has addressed the merits of that claim directly.

The IDEA's statutory scheme requires that a state educational agency conduct the administrative review immediately preceding any civil action. Whether that review is the first

7

tier of review (and therefore the only administrative tier of review), or the second does not matter. The IDEA defines a state educational agency as "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools, or, if there is no such officer or agency, an officer or agency designated by the Governor or by State law." 20 U.S.C. § 1401(32).

E.L. does not, indeed cannot, assert that OAH is North Carolina's state educational agency, as the IDEA defines it. The North Carolina Board of Education ("NCBOE") is North Carolina's "state educational agency," and E.L. acknowledges as much. (Doc. 18 ¶ 38.) In North Carolina, it is the one and only "State board of education"; it is the one agency "primarily responsible for the State supervision of public elementary schools and secondary schools." 20 U.S.C. § 1401(32). North Carolina's statute implementing the IDEA specifically designates NCBOE, through its Exceptional Children Division, to provide an SRO for the final tier of administrative review. N.C. Gen. Stat. § 115C-109.9. According to the state statute, the only role NCBOE plays in the first tier is to create a "binding memorandum of understanding" with OAH to ensure that the first tier comports with the IDEA's standards for due process hearings. N.C. Gen. Stat. § 115C-109.6(j).

8

E.L. relies heavily on the ALJ's statement in his conclusions of law that his decision was being rendered on behalf of the state educational agency. (Doc. 7-2 at 57.) This is a misstatement.[3] As the SRO observed, the fact that OAH is a statewide agency does not transform it into a "state educational agency" for purposes of the IDEA. (Doc. 7-4 at 23-24.) OAH coordinates the appointment of hearing officers for the local tier of review.[4] The SRO aptly explained why state law delegates to OAH this task of appointing a hearing officer for the local tier of review:

> Prior to the use of OAH, state law allowed the many local LEAs to organize and conduct hearings. This resulted in great differences in the manner these hearings were conducted and many inconsistencies, for there were no uniform procedures in effect. The use of OAH for the initial hearing was a significant improvement. The OAH, with trained ALJs, now efficiently and consistently conducts the initial hearing in and for the LEA [local educational agency] in accordance with G.S. 115C-106.6.

(Doc. 7-4 at 24.)

The court concludes that E.L. has failed to demonstrate that North Carolina's choice to permit OAH to appoint local hearing officers to decide the case on behalf of LEAs is

---

[3] E.L. cannot claim that she did not appeal because she was somehow misled by this error, because the record reveals that she invited it. The ALJ's erroneous legal conclusion was proposed to him in "Petitioner's Proposed Final Decision" at paragraph 331.

[4] The state statute requires that this first tier of review be conducted "in the county where the child attends school," unless the parties agree otherwise. N.C. Gen. Stat. § 115C-109.6(d).

9

impermissible. The hearing by the OAH-appointed ALJ satisfies the "due process hearing" contemplated by 20 U.S.C. § 1415(f), and the second tier of review conducted by the NCBOE-appointed SRO satisfies the "appeal" contemplated by section 1415(g). Consequently, North Carolina's two-tiered process of review is authorized by the IDEA, and E.L.'s contention to the contrary is rejected.

### B. Exhaustion of Remedies

The court turns next to the Board's contention that E.L. has not exhausted her remedies because she did not appeal the ALJ's decision and, therefore, this court lacks jurisdiction. In response, E.L. argues that, even if North Carolina's second tier of review was authorized, she did not have to appeal the ALJ's adverse decision in order to exhaust her remedies because the SRO conducted a full review of all the issues in any event. Thus, E.L. contends, this court may consider her claims.[5]

---

[5] As the Fourth Circuit recently noted, "the Supreme Court has, in the last decade, frequently addressed whether an element of a claim or a claims-processing rule is 'jurisdictional.'" United States v. Wilson, 699 F.3d 789, 793 (4th Cir. 2012), cert. denied, 133 S. Ct. 2401 (2013). That line of jurisprudence includes Gonzalez v. Thaler, __ U.S. __, 132 S. Ct. 641 (2012); Henderson ex rel. Henderson v. Shinseki, __ U.S. __, 131 S. Ct. 1197 (2011); Dolan v. United States, 560 U.S. 605 (2010); Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010); Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67 (2009); John R. Sand & Gravel Co. v. United States, 552 U.S. 130 (2008); Bowles v. Russell, 551 U.S. 205 (2007); Arbaugh v. Y & H Corp., 546 U.S. 500 (2006); Eberhart v. United States, 546 U.S. 12 (2005) (per curiam); and Kontrick v. Ryan, 540 U.S. 443 (2004). The Supreme Court has

"[W]here administrative remedies have not been exhausted, parties cannot maintain an action in federal court under [20 U.S.C.] § 1415(i)(2)." <u>M.E. ex rel. C.E. v. Buncombe Cnty. Bd. of Educ.</u>, 72 F. App'x 940, 941 (4th Cir. 2003). This court's jurisdiction is limited "to review of the final 'findings and

---

cautioned against the "profligate use" of the term "jurisdictional." <u>Union Pac. R.R.</u>, 558 U.S. at 81. The term should be limited to rules governing "a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." <u>Henderson</u>, 131 S. Ct. at 1202. However, "Congress is free to attach the conditions that go with the jurisdictional label to a rule that we would prefer to call a claim-processing rule," and so courts must assess whether there is "any clear indication that Congress wanted the rule to be jurisdictional." <u>Id.</u> at 1203 (citation omitted) (internal quotation marks omitted).

Whether a rule is jurisdictional "is not merely semantic," but may hold "considerable practical importance for judges and litigants." <u>Id.</u> at 1202. A rule affecting a court's jurisdiction can be raised by any party, including the court, at any time, even at the completion of a trial. A claims-processing rule, on the other hand, must be raised by one of the parties and must be raised at the appropriate time in the litigation or it is forfeited.

The Fourth Circuit has not addressed whether a failure to exhaust the administrative remedies that the IDEA provides is "jurisdictional" in the light of the last decade of Supreme Court jurisprudence. Before this series of Supreme Court decisions, the Fourth Circuit held, without analysis, that IDEA exhaustion was a jurisdictional bar. <u>MM ex rel. DM v. Sch. Dist. of Greenville Cnty.</u>, 303 F.3d 523, 536 (4th Cir. 2002). More recently, however, the Ninth Circuit thoroughly analyzed the IDEA and determined that a failure to exhaust its remedies was not a jurisdictional bar, but merely a claims-processing rule. <u>Payne v. Peninsula Sch. Dist.</u>, 653 F.3d 863, 867-71 (9th Cir. 2011) <u>cert. denied</u>, 132 S. Ct. 1540 (2012). Another judge of this court has noted the uncertainty in this area of law before and, in the absence of a clear Fourth Circuit holding to the contrary, followed <u>MM ex rel. DM</u> in continuing to hold that a failure to exhaust the IDEA's remedies is a jurisdictional bar. <u>S.F. ex rel. J.F. v. Cabarrus Cnty. Bd. of Educ.</u>, No. 1:12CV560, 2013 WL 4552639, at *11 (M.D.N.C. Aug. 28, 2013).

Ultimately, for purposes of this case the IDEA exhaustion's status as a jurisdictional prerequisite is not dispositive because the Board *did* raise exhaustion as a bar to E.L.'s claims, thus mooting any consideration whether the court must independently raise the issue as a jurisdictional defect.

11

decision' of the administrative proceedings" under the IDEA. Id. (quoting 20 U.S.C. § 1415(i)(2)(A)).  The Fourth Circuit has recognized "three narrow exceptions" to the IDEA's exhaustion requirement: "(1) when the administrative process would have been futile; (2) when a school board failed to give parents proper notification of their administrative rights; or (3) when administrative exhaustion would have worked severe harm upon a disabled child."  MM ex rel. DM, 303 F.3d at 536.

E.L. petitioned for a due process hearing and received a hearing and decision on the merits from the ALJ.  Any party aggrieved by the ALJ's decision had the right to appeal it for state-level review.  20 U.S.C. § 1415(g).  E.L. chose not to appeal.  She asserts, without citation to any authority, that she did not do so because the Board already had appealed and, "when the Board filed its request for an independent review by a SRO, the SRO was obligated to conduct an independent review of the entire record and the entirety of the hearing officer's decision.  And that is precisely what the SRO did." (Doc. 40 at 3.)

Contrary to E.L.'s assertions, the SRO did *not* conduct an independent review of the entire record, nor was he required to do so by law.  The IDEA requires only that, upon appeal, the state educational agency conduct an independent review "of the findings and decision appealed under paragraph (1)," not *all* the

12

findings made in the due process hearing. 20 U.S.C. § 1415(g)(2).[6] The Board appealed only the specific issue which it lost before the ALJ: whether it had provided appropriate speech language services from April to May 2009 and September to December 2009. (Doc. 7-4 at 5.) E.L. appealed nothing, even though the ALJ's decision was unfavorable to her in most respects. Therefore, on review, the only issue before the SRO was the speech language services issue raised by the Board. Indeed, the SRO took great pains to clarify that his decision was only on the specific issue appealed.[7] He expressly concluded that "[E.L.] chose not to appeal, thus those portions of the ALJ's Decision unfavorable to [E.L.] remain intact and need no

---

[6] Section 1415(g)(1) provides: "If the hearing required by subsection (f) is conducted by a local educational agency, *any party aggrieved by the findings and decision* rendered in such a hearing may appeal *such findings* and decision to the State educational agency." (Emphasis added.) Section 1415(g)(2) provides: "The State educational agency shall conduct an impartial review *of the findings and decision appealed under paragraph (1)*." (Emphasis added.) The state implementing statute contains similar language. N.C. Gen. Stat. § 115C-109.9(a).

[7] From the outset, the SRO stated that his responsibility was to "make a decision related to those issues appealed by [the Board]." (Doc. 7-4 at 5.) The SRO provided facts relating to the whole record merely to provide context for his decision and separated into a different section the facts relating to the issue appealed. (Id. at 6, 17-18.) Similarly, the SRO acknowledged that he "only had to provide Conclusions pertaining to those issues that were appealed," and provided other conclusions solely "to enable one to understand" his decisions. (Id. at 19.) Again, in his "Decision" section, the SRO identifies "the lack of speech therapy services" as "the sole issue in the appeal that the Review Officer must decide." (Id. at 28.)

13

further action by the Review Officer." (_Id._ at 20.)[8]

E.L. contends that "it would be futile" for her to appeal the ALJ's decision "because the SRO has already rendered a final decision that explicitly addresses all of [her] claims for relief." (Doc. 40 at 3-4.) But, as noted, the SRO did not address E.L.'s claims because they were not appealed, and the mere fact the SRO has issued his decision does not support a futility argument. Moreover, to the extent E.L. is arguing that it would be futile _now_ for her to appeal to the SRO, she cannot

---

[8] At certain points in his decision, the SRO indicated that he cursorily reviewed issues not appealed solely for "significant errors." (_Id._ at 5.) Though the SRO may have done so in the interest of thoroughness, it was not within his jurisdiction to review any issues not appealed. The Ohio and Pennsylvania cases the Board cites are not binding on this court but are instructive. (Doc. 34 at 23.) Ohio and Pennsylvania also have two-tiered systems and Ohio law implementing the IDEA is similar to North Carolina law.

In Ohio, an aggrieved party must file an appeal from the first tier of review in order to exhaust his remedies, even if the other party has also appealed. Gibson v. Forest Hills Local Sch. Dist., Bd. of Educ., No. 1:11-cv-329, 2012 WL 1197896, at *4-5 (S.D. Ohio Apr. 10, 2012). The court concluded that the second-tier state review officer was limited to reviewing only the issues appealed, even though Ohio law required the state review officer to examine "the entire hearing record." Id. at *4 (quoting Ohio Admin. Code § 3301-51-05(K)(14)(b)(iii)). North Carolina law has no similar provision requiring state review officers to examine the entire hearing record on appeal; it simply requires state review officers to "conduct an impartial review of the findings and decision appealed under this section." N.C. Gen. Stat. § 115C-109.9. Therefore, it is even clearer that under North Carolina law state review officers review only the issues specifically appealed.

In Pennsylvania, too, an aggrieved party must file an appeal from the first tier of review in order to exhaust his remedies, even if the other party has also appealed. See Kristi H. ex rel. Virginia H. v. Tri-Valley Sch. Dist., 107 F. Supp. 2d 628, 632 (M.D. Pa. 2000) (finding "nothing in the law," either the IDEA or Pennsylvania law, requiring the state review panel to review issues not specifically appealed).

14

benefit from an emergency she created. E.L. chose not to appeal when she had the chance to do so. She cannot leapfrog North Carolina's administrative review process and then complain because it will not now hear her claims. To allow her to do so "would undermine agency functions and clog the courts with unnecessary petitions." Kurfees v. I.N.S., 275 F.3d 332, 336 (4th Cir. 2001).

E.L.'s failure to appeal appears to have been part of a calculated gambit. Rather than appeal the ALJ's adverse decision, E.L. moved to quash the Board's appeal on the same ground she has advanced unsuccessfully here: that the SRO lacked legal authority to decide the Board's appeal because, she claimed, the ALJ's due process hearing constituted a final decision by a "state educational agency." (Doc. 40-1.) By choosing this tack, E.L. put all of her eggs in that one basket in lieu of preserving her own rights by filing her own appeal of the ALJ's findings adverse to her. Having lost her challenge, E.L. cannot now complain about the situation in which she finds herself.

In sum, E.L. has failed to exhaust her administrative remedies for the majority of the issues involved in this case. The only issue for which she did exhaust her administrative remedies, and therefore the only issue properly before this court, is whether the Board provided appropriate speech language

services from April to May 2009 and September to December 2009. The court turns to that issue now.

### C. Summary Judgment Motion on Speech Language Services

#### 1. Standard of review

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When a party files a motion for summary judgment challenging a state administrative ruling under the IDEA, the motion "may more aptly be described . . . as a motion for summary adjudication." Hanson ex rel. Hanson v. Smith, 212 F. Supp. 2d 474, 480-81 (D. Md. 2002) (citing Cavanagh v. Grasmick, 75 F. Supp. 2d 446, 457 (D. Md. 1999)).

The parties generally agree as to the standard of review regarding IDEA administrative proceedings. In reviewing the factual findings, the court is charged with making its own determinations based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii); J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va., 516 F.3d 254, 258-59 (4th Cir. 2008). However, the court is also required to "receive the records of the administrative proceedings," 20 U.S.C. § 1415(i)(2)(C)(i),

16

"an obligation that carries with it the implied requirement that due weight shall be given to these proceedings." Peterson, 516 F.3d at 259 (internal quotation marks omitted) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 206 (1982)). This standard requires the court to assume findings of fact made in the administrative proceedings *prima facie* correct, and, if it fails to adhere to them, to explain why. G ex rel. RG v. Fort Bragg Dependent Sch., 343 F.3d 295, 302 (4th Cir. 2003) (citing MM ex rel. DM, 303 F.3d at 531); see Doyle v. Arlington Cnty. Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991).

Although neither party references it, this deference is limited to factual findings. A district court must review findings about the IDEA's legal requirements *de novo*. Fitzgerald v. Fairfax Cnty. Sch. Bd., 556 F. Supp. 2d 543, 550 (E.D. Va. 2008); Alexis v. Bd. of Educ. for Baltimore Cnty. Pub. Sch., 286 F. Supp. 2d 551, 556 (D. Md. 2003).

When a state's administrative review for IDEA claims is two-tiered, the SRO must defer to the ALJ's determinations regarding credibility, since the ALJ hears the testimony and is best positioned to make credibility judgments. CM ex rel. JM v. Bd. of Pub. Educ. of Henderson Cnty., 184 F. Supp. 2d 466, 470 (W.D.N.C. 2002). The SRO is required to give due weight to the ALJ's factual findings, presuming them to be *prima facie* correct

if regularly made. _Wittenberg v. Winston-Salem/Forsyth Cnty. Bd. of Educ._, No. 1:05CV818 (M.D.N.C. Nov. 18, 2008); _see also Springer v. Fairfax Cnty. Sch. Bd._, 134 F.3d 659, 663 n* (4th Cir. 1998). If the SRO reverses an ALJ's factual finding, the SRO must provide reasons for doing so. _Id._ If the SRO and ALJ come to the same conclusion, that conclusion is given greater deference. _Cone v. Randolph Cnty. Sch. Bd. of Educ._, 657 F. Supp. 2d 667, 673 (M.D.N.C. 2009).

### 2. Speech and language services of the IEPs

Because the ALJ found E.L.'s IEPs appropriate and E.L. did not appeal that determination, the only matter properly under review is whether E.L. received speech language services that comported with her IEPs during several months in 2009.

From April to May 2009 (the first period in which the ALJ found the Board's services to be insufficient), E.L. was enrolled at FPG full-time and had not yet begun her split program with Mariposa. The speech language pathologist ("SLP") responsible for her speech language services was Kathleen Davis ("Davis"). Davis provided services to E.L. in a group setting. (Doc. 7-2 at 52.) She also supervised graduate clinicians who provided speech services to E.L. in a group setting. Hr'g Tr. vol. 9, 1593:4-6. According to Davis, the graduate clinicians wrote formal notes on E.L.'s progress, which Davis then reviewed and signed. _Id._ at 1599:12-17. Davis also kept her own,

18

handwritten, informal notes on her students' progress. Id. at
1638:4-5, 18-23. After Davis left FPG in summer 2009, she
shredded all her personal, handwritten notes about E.L., as she
did for each of her students. Id. at 1639:11-14, 1640:14-20.

For the period from April to May 2009, the ALJ concluded
that the Board did not provide "the direct one on one speech
language therapy required [by the IEP]." (Doc. 7-2 at 52.) To
support that finding, the ALJ noted that services were provided
in a group setting, that graduate clinicians authored the formal
notes about E.L.'s progress instead of Davis, and that Davis
shredded her personal notes about E.L.'s progress. (Id.)

As the SRO correctly stated, however, E.L.'s 2008-09 IEP
did not require one-on-one therapy. (Doc. 7-4 at 22.) It
required that E.L. receive 45 sessions of speech language
services per 9-week grading period and specifically noted that
the location of the services would be in "tse," or "total school
environment." Hr'g Ex. 23. The IEP also specifically noted
that all services would be provided through an "embedded,
inclusive model." Id. The "embedded" model means that E.L.
would be given direct therapy in the classroom, with her peers
present. Furthermore, the fact that graduate clinicians
provided some of the services and wrote the notes on E.L.'s
progress does not mean the services were insufficient. Davis
supervised the graduate clinicians and reviewed all of their

19

notes prior to signing. She also wrote her own notes and only shredded them out of concern for confidentiality once she left FPG. (Doc. 7-4 at 21.) Although E.L.'s parents may have believed that E.L. would progress more through one-on-one instruction, E.L. did make "significant progress" through direct, embedded instruction toward her IEP's speech language goals during the 2008-09 year, which is what matters. Hr'g Tr. vol. 9, 1613:16; see also Doc. 7-4 at 21-22. The ALJ incorrectly concluded that E.L.'s 2008-09 IEP required one-on-one therapy and therefore incorrectly concluded that the services E.L. received were inadequate.

From September to December 2009 (the second period in which the ALJ found the Board's services to be insufficient), E.L. was enrolled in a split program, spending three days a week at Mariposa and two days a week at FPG. At FPG, Melissa Felicelli ("Felicelli") was the SLP responsible for providing E.L.'s speech services. Felicelli provided direct speech therapy to E.L. both in the embedded classroom setting and one-on-one. Felicelli believed that she would be better able to deliver her services if she pulled (or reverse-pulled[9]) E.L. out of the group and worked with her individually, so she did just that several

---

[9] Felicelli explained reverse-pulling as when the other children leave the classroom (for example, to go outside for recess or other activities) and the teacher remains behind with one child in the classroom for one-on-one attention. Hr'g Tr. vol. 5, 848:3-8.

times initially. Hr'g Tr. vol. 5, 848:2-12, 849:14-20. However, Felicelli's preference for one-on-one instruction did not fit with FPG's embedded model. According to Felicelli, she was told that removing children for one-on-one therapy was unacceptable; Felicelli resigned because of the difference of opinion in November. Id. at 850:14-15, 903:3-7.

In finding that the speech services for September to December 2009 were inadequate, the ALJ again concluded that the Board did not provide "the direct one on one speech language therapy required [by the IEP]." (Doc. 7-2 at 52.) The ALJ focused on the conflict between Felicelli's preference for one-on-one instruction, which E.L.'s parents also clearly prefer, and FPG's preference for integrated or embedded instruction.

E.L.'s IEP, however, did not require Felicelli to provide one-on-one therapy. The 2009-10 IEP, revised to reflect E.L.'s split enrollment, merely required the Board to provide four hours a month of speech therapy. Hr'g Ex. 24, 95. Again, that therapy was to be provided in the "total school environment." Id. As Felicelli herself testified, direct therapy does not have to be one-on-one. Hr'g Tr. vol. 5, 914:3-14. Felicelli provided direct speech therapy as E.L.'s IEP required until she resigned in November 2009. (Doc. 7-4 at 21.) Felicelli's replacement, Michelle Flippen ("Flippen"), then provided speech

21

therapy in the classroom and kept progress notes on E.L. until Flippen began maternity leave in late January 2010. (Id.)

Furthermore, the ALJ made no finding that the speech language services the Board provided from January 2010 to March 2010 (when E.L. was removed from FPG) did not fulfill E.L.'s IEP. And yet, Dr. Patsy Pierce, the SLP who took over for Flippen in January 2010, also did not provide one-on-one instruction. She provided direct speech language services as the IEP required, but only removed E.L. from the group for individualized attention once. Hr'g Tr. vol. 10, 1915:20-1916:22.

The failure of the Board to provide one-on-one speech language services during 2009 cannot be the basis for a finding that the Board denied E.L. a FAPE because E.L.'s IEPs did not require one-on-one services and E.L.'s IEPs were found appropriate for her needs and adequate to ensure her progress. Thus, the Board's motion for summary judgment on this claim will be granted.

## III. CONCLUSION

For the reasons stated, the court finds that the IDEA authorizes North Carolina's two-tiered administrative system of review in this case and that E.L. failed to exhaust her administrative remedies under that system on all issues except those relating to speech language services from April to May and

22

September to December 2009, which the court finds comported with E.L.'s IEPs for those periods. Therefore, the Board did not deny E.L. a FAPE.

IT IS THEREFORE ORDERED as follows:

1. E.L.'s motion to treat her summary judgment motion as timely filed (Doc. 41) is GRANTED;

2. E.L.'s motion for summary judgment (Doc. 38) is DENIED;

3. The Board's motion to dismiss or in the alternative for summary judgment (Doc. 33) is GRANTED, and E.L.'s claims that the Board failed to provide E.L. a FAPE as to speech and language services for April through May 2009 and September through December 2009 are DISMISSED WITH PREJUDICE, and E.L.'s claims that the Board failed to provide E.L. a FAPE in all other respects are DISMISSED WITHOUT PREJUDICE.

 /s/   Thomas D. Schroeder
United States District Judge

September 30, 2013